*483 OPINION OF THE COURT
Mark M. Meddaugh, J.
This matter began by service of a summons and verified complaint filed by plaintiff on April 16, 1997. The plaintiff’s complaint alleged that plaintiff, on or about September 11, 1991, entered into a retail installment contract with the Hannolds for the purchase of a mobile home. The plaintiff provided financing to the defendant Hannolds in the amount of $25,086.50. Under the terms of this contract, the plaintiff retained a security interest in defendants Hannolds’ mobile home to serve as collateral for the repayment of the amount financed. The plaintiff perfected its security interest in accordance with the Uniform Commercial Code. The retail installment contract specifically provided that the mobile home could be repossessed if the defendants Hannold defaulted in repayment. On July 11, 1996, the defendants Hannold failed to pay the installments due and an accelerated payoff balance of $21,286.14 became due and owing to the plaintiff. Plaintiff moved for an order to take immediate possession of the mobile home and for a money judgment in the amount owed.
On August 7, 1997, the plaintiff moved the court by order to show cause for an order granting permission for joinder to add the County of Sullivan as a party defendant in the action, granting an order of seizure for the mobile home, and temporarily restraining the County of Sullivan from removing the mobile home, or from selling or transferring the mobile home through a tax sale. On August 14, 1997 the defendant County of Sullivan, by affirmation of David M. Gold, Esq., moved the court requesting that the order to show cause filed by the plaintiff be amended by removing the temporary restraining order against the defendant County of Sullivan as they had not yet been joined as a necessary party defendant. Subsequently, on August 19, 1997 the plaintiff filed an amended order to show cause requesting the same relief, deleting the paragraph regarding the defendant County of Sullivan and ordering that the defendants Hannold be restrained from removing the mobile home or from taking any action which would adversely affect the plaintiff’s security interest. Accompanying the order to show cause was the affidavit in support of the application for joinder by Anthony R. Hanley, Esq. on behalf of the plaintiff. Said affidavit set forth facts alleging that, on or about August 30, 1996, the plaintiff had received “notice of expiration OF REDEMPTION PERIOD FOR LAND SOLD FOR TAXES” from the County of Sullivan pertaining to defendants Hannolds’ *484 property. The notice detailed an amount due and owing to the County of $11,036 as of September 30, 1996 and stated: “Unless the amount set forth above is paid on or before the expiration of the redemption period to the County Treasurer at his office at the County Government Center, 100 North Street, Monticello, New York 12701, the Conveyance previously made shall become absolute and the occupant and all others shall be forever barred from redeeming such real property. The property will be sold at public auction.” Upon receipt of said notice the plaintiff and the County made efforts to secure and clarify their respective rights, however their efforts were interrupted by defendants Hannolds’ filing of a (11 USC) chapter 13 bankruptcy petition. Said bankruptcy temporarily stayed the plaintiff and the County’s ability to enforce their respective rights. On December 3, 1996, by unopposed motion of the plaintiff herein, the Bankruptcy Court lifted the temporary stay. On February 20, 1997 the Bankruptcy Court dismissed the case. Plaintiff’s second attempt to enforce its rights to the mobile home was again delayed by a refiling by the defendants Hannold for bankruptcy under (11 USC) chapter 7. The plaintiff moved for relief from the stay which was granted on May 20, 1997. The defendants Hannold eventually received a discharge in bankruptcy on July 16, 1997.
It was sometime after this point that the plaintiff became aware that the County of Sullivan intended to assert a priority right to the mobile home as realty. The County’s assertion was based on their belief that the mobile home should be classified as real property and therefore subject to sale as part of the real estate at the tax sale. The plaintiff maintained that the mobile home was personalty and therefore not part of the real estate subject to sale pursuant to the tax sale.
As a result, the plaintiff, on August 25, 1997, filed with the court a supplemental affidavit in support of the application for an order of seizure by Robert M. Rickert, plaintiff’s vice-president and a supplemental affidavit in support of an order of seizure by Michael Wilsch, a collector/adjuster employed by Tammac Corporation and specializing in the coordination of repossession of mobile homes. The affidavit of Michael Wilsch supported the plaintiff’s position that the mobile home remained mobile in nature and had at no time become permanently affixed to the real estate. The affidavit of Robert Rickert supported the plaintiffs position that repossession was the appropriate remedy.
On August 27, 1997, the defendant, County of Sullivan, by way of affidavit in partial opposition to the order to show cause, *485 by Ira J. Cohen, County Attorney, moved the court for an order denying plaintiffs motion for an order of seizure. The affidavit alleges that the County acquired a lien on the real property of the defendants Hannold for unpaid taxes in 1993 and that the amount of the lien on April 10, 1997 was $13,488.45. Annexed to the affidavit of Ira J. Cohen was the affidavit of Joan E. Drapak, Real Property Tax Supervisor in the Office of the Sullivan County Treasurer, showing that the mobile home was separately assessed at $24,700, however, that figure was apparently later changed to $12,000. Pursuant to the affidavit of Ira J. Cohen, the defendant County of Sullivan believes that the authority to classify the mobile home as real property is statutorily codified in Real Property Tax Law § 102 (12) (g) which states:
“12. ‘Real property’, ‘property’ or ‘land’ mean and include * * *
“(g) Forms of housing adaptable to motivation by a power connected thereto, commonly called ‘trailers’ or ‘mobile homes’, which are or can be used for residential, business, commercial or office purposes, except those (1) located within the boundaries of an assessing unit for less than sixty days or (2) unoccupied and for sale.”
It is the defendant County of Sullivan’s opinion that this statutory provision is controlling. In the alternative, the County argues that should it be found that section 102 (12) (g) is not controlling that there remains a question as to the permanency of the mobile home which would make an order of seizure inappropriate.
By decision and order dated September 23, 1997, this court granted plaintiffs motion for joinder of the County of Sullivan and found that an order of seizure pursuant to CPLR 7102 (a) applied only to chattels. The court further found that a determination as to the status of the mobile home as personalty subject to seizure or realty could not be adequately established upon the facts before the court. Therefore all parties were instructed to appear before the court for a hearing on the issue of the permanency of the mobile home and a final determination regarding the order of seizure. (As a result of the joinder of the County of Sullivan a supplemental summons and verified complaint was filed and the defendant County of Sullivan filed its answer dated October 17, 1997. The plaintiff filed a verified answer on November 3, 1997 and a verified reply to the amended answer on December 1, 1997.) Prior to the hearing, and as a direct result of the second filing for bankruptcy *486 by the defendants Hannold, the plaintiff was contacted by the trustee in bankruptcy and with the consent of the Hannolds, voluntarily relinquished the mobile home to the plaintiff. Subsequently, the Plaintiff repossessed the mobile home and moved the court to withdraw its motion for an order of seizure. The defendant County of Sullivan opposed the plaintiff’s motion to withdraw and the court held oral arguments on October 8, 1997 to determine the plaintiff’s right to withdraw its motion for seizure and repossess the mobile home.
Oral arguments were held on October 8, 1997 with Ira J. Cohen, Esq. present on behalf of the defendant County of Sullivan. Defendants Hannold offered no opposition to the withdrawal of plaintiff’s motion for seizure. Plaintiff was represented by teleconference with Anthony R. Hanley, Esq. The defendant County of Sullivan took the position that the plaintiff acted improperly in using “self-help” in securing the mobile home during the pendency of the motion for an order of seizure. The plaintiff alleges that it was their motion for an order of seizure and once no longer needed it was their prerogative to withdraw it.
By decision and order of this court dated October 9, 1997 the court held that it is within the court’s discretion to grant leave to withdraw a motion once the motion has been fully submitted. Such decisions are made after an analysis of the movant’s motives in withdrawing the motion and the disadvantages to the opposing party. The court further opined that the issue on a motion for an order of seizure is: who has a superior right to the chattel and whether or not the chattel is being wrongfully held. The court granted the plaintiff’s motion to withdraw holding that a “Motion for an Order of Seizure on property which has already been seized, albeit by the Plaintiff, renders the Motion for an Order of Seizure moot.”
On November 17, 1997, the defendant County of Sullivan moved this court by notice of motion and affirmation of David M. Gold, Assistant County Attorney, for an order granting the County of Sullivan the following relief: summary judgment dismissing the complaint; granting summary judgment as to liability on the first and third counterclaims which requested damages for improper removal of the mobile home; severing the action as to the second counterclaim which requested sanctions against the plaintiff for improper removal of the mobile home; continuing the action for the purposes of determining damages on the first and third counterclaims; and determining liability and damages on the second counterclaim.
*487 The defendant’s position in favor of the motion for summary judgment forms the basis of this dispute. The defendant alleges that Real Property Tax Law § 102 (12) (g) defines mobile homes as real property. Further, it is alleged that Real Property Tax Law § 300 declares that all real property is subject to taxation. Relying on two cases, Melahn v Hearn (60 NY2d 944 [1983]) and Borisenok v Hug (212 AD2d 282 [1995]), the defendant claims that the title conveyed in a tax sale is not simply the title of the delinquent property owner. Thus, a purchaser of property at a tax sale acquires a new and complete title to the land free of any prior claims. Finally, the defendant asserts two affirmative defenses. The first alleges that the mobile home is defined as real property under the Real Property Tax Law. The second alleges that the mobile home is real property under the common law. However, defendant claims, the common-law definition need not be reached since a statutory characterization of this property exists.
On or about December 1, 1997, the plaintiff filed an affidavit by Anthony R. Hanley, Esq., in opposition to the defendant’s summary judgment motion. The plaintiff’s position is that the mobile home was at all times personal property and that the mobile home’s status as personalty has never changed. In support of this position, the plaintiff filed the affidavit of Terry Watson, a coordinator for the removal of repossessed mobile homes employed by the plaintiff. Mr. Watson’s affidavit detailed the removal of the mobile home which, according to the plaintiff, was easily removed from the property and at all times remained mobile. The mobile home was at no time connected to the real property by foundation or otherwise. It was therefore plaintiff’s position that the mobile home never became affixed to the real property and as such remained personal property. It is further alleged that any tax lien the County may have extends only to real property and not to personalty.
By decision and order of this court entered on January 23, 1997, the defendant’s motion for summary judgment was denied. The court held that a triable issue of fact existed regarding the status of the mobile home as real property or personal property. The parties were further directed to appear before the court for an evidentiary hearing regarding this issue. On February 18, 1998, the County filed a notice of appeal regarding this decision.
On March 12, 1998, the evidentiary hearing was held. The defendant County of Sullivan appeared and was represented by David Gold, Esq. The plaintiff appeared and was represented *488 by Anthony T. Hanley, Esq. The defendants Hannolds failed to appear. Plaintiff called Joseph G. Gaynor as their first witness. Mr. Gaynor is president of an excavation company with its primary concentration in the installation of mobile homes. Mr. Gaynor testified that during the course of his experience he has been involved in the removal and transport of approximately 400 mobile homes. Mr. Gaynor testified in detail regarding the removal of the mobile home from the property in question. Mr. Gaynor testified that the Hannolds’ mobile home had no foundation, no concrete pad and was not secured to the ground in any fashion. The mobile home was surrounded by some decaying particle board which was easily removed and discarded. The mobile home was supported every eight feet by eight-inch cement blocks. Mr. Gaynor’s crew consisted of two men and himself. The crew jacked up the mobile home and replaced two of the four axles which were bent and broken. The crew also replaced four of the eight tires which were still in position on the mobile home but which had dry rot and were no longer road worthy. They also disconnected the telephone line and electrical service by simply cutting the lines. The mobile home was equipped with its original trailer hitch which was easily connected to an all-terrain forklift used for the removal and transport of mobile homes. Mr. Gaynor testified that the entire process took him and his crew six hours. The plaintiff then presented the witness with a photograph depicting the property after removal of the mobile home. The picture was entered into evidence as plaintiff’s exhibit No. 9 after the witness testified that it was a true and accurate depiction of the premises at the time of removal of the mobile home. The picture showed some discoloration of the grass area but no despoliation of the land.
On cross-examination the County questioned Mr. Gaynor regarding the period of time it would take the tires to reach the stage of dry rot that he had witnessed at this location. Mr. Gaynor testified that tires are recycled in the mobile home industry and therefore it is difficult to tell how old these tires were. Mr. Gaynor stated that sometimes even tires on new mobile homes will show signs of dry rot due to this practice of recycling the tires. Mr. Gaynor also testified that the axles can also be recycled but it was his opinion that the axles in this particular mobile home were broken upon delivery of the home to that site. The defendant also questioned Mr. Gaynor regarding a set of wooden steps which were pictured at the rear of the mobile home. Mr. Gaynor testified that the steps were not *489 attached to the mobile home and were left on the property when the mobile home was driven away.
At this point, Mr. Gold renewed his motion for summary judgment and Mr. Hanley requested that the court visit the site and/or view the mobile home. Mr. Gold also moved the court for permission to submit a memorandum of law and that request was granted. On or about March 24, 1998, the court received a memorandum of law from the defendant County and thereafter the plaintiff filed a memorandum of law dated March 27, 1998. The matter is now fully submitted.
It is clear that mobile homes located on real property may be assessed to the land owner for tax assessment purposes under section 102 (12) (g) of the Real Property Tax Law. It would appear that, if in fact all mobile homes were “real property”, there would be no need to enact a specific section which would define them as such. Further, one may conclude that a “mobile” home should not lose its identity as personal property until such time as it becomes so affixed to the real property as to lose its separate identity and its “mobile” character. In this particular case, based upon the facts as established at the evidentiary hearing before this court, the testimony clearly established that the mobile home did not become so affixed to the real estate as to lose its personal property identity. Therefore, it did not become classified as “real property” for purposes of establishing who had a prior security interest in the mobile home even though under the statutory definition it could be assessed for tax purposes as real property as long as it remained stationary upon the taxed parcel.
The Real Property Tax Law specifically gave the taxing agencies the authority to tax mobile homes as a part of the real property for assessment purposes. As previously set forth in my decision of January 23, 1998, this does not give the taxing agency carte blanche to take possession of all mobile homes upon default in payment of land taxes. Although section 102 (12) (g) of the Real Property Tax Law defines a mobile home as real property, this statutory definition has been interpreted by the courts to mean that a mobile home is classified as real property for tax assessment purposes. (Casaburi v Dow, 100 AD2d 693 [3d Dept 1984]; Reddick v County of Chemung, 114 AD2d 559 [3d Dept 1985].) In Casaburi the Court specifically cited to the legislative intent of section 102 (12) (g) indicating that the legislative purpose of this statute was to ensure that mobile homeowners receiving the benefit of public services from municipalities where their mobile homes are located *490 would pay, indirectly through an increase in lot rent, by assessing the owners of the lots on which the homes were located. Nowhere in the statute, or in the case law that followed, is it indicated that section 102 (12) (g)’s definition of a mobile home as real property is determinative of the issue of whether or not the mobile home should be classified as realty or personalty for purposes of determining who would have a priority interest in such property. In fact, the primary case law on this issue has indicated that in a contest between the mobile homeowner and a tax foreclosure the mobile homeowner wins; albeit that many of the cases to date have dealt with an entirely separate issue of notice of the tax sale and constitutional issues.
This court finds the County’s position that this is not a common-law issue but strictly a statutory issue to be unpersuasive. Clearly there exists a statute which defines a mobile home as real property for tax assessment purposes. However, it is equally clear that the case law has repeatedly stated that mobile homes may be defined as real property for “assessment” purposes. This would make sense, particularly as Casaburi (supra) points out, when the municipality is losing money providing services to the mobile homeowner who is not paying the appropriate tax. However, this would not make sense in respect to the fact situation before this court where the ultimate determination of this mobile home as real property would effectively eliminate the prior lienholder’s security interest in the mobile home which was treated and classified as chattel since inception. To rule that this mobile home is real property subject to the tax sale even though not permanently affixed to the property would be to force the plaintiff either to lose its security interest in the mobile home or to pay the taxes on the real property when it had no vested interest in the real property. This is juxtaposed to any other situation involving tax foreclosures wherein the mortgagee would have an interest in both the real estate and the home located thereon. Certainly under those circumstances a tax foreclosure would wipe out the mortgagee’s interest if they failed to come forward. However, in the case before this court, the plaintiff had a secured interest in the mobile home alone and upon notification of the tax delinquency it moved to repossess its property.
The County further relies on section 1180 of the Real Property Tax Law stating that the plaintiff had no right to remove the mobile home and therefore the removal was in violation of this section which states that a person shall not despoil any lands which are subject to a delinquent tax lien. The court *491 finds it noteworthy however that the Legislature chose to specifically state the following: “1. Neither the owner, occupant nor any other person shall have the right to despoil any lands subject to a delinquent tax lien by removing buildings or mobile homes, other than separately assessed mobile homes” (emphasis added; Real Property Tax Law § 1180 [1].) It was apparently the legislative intent that separately assessed mobile homes may be removed from the property of the owner even though a delinquent tax lien has been filed against the real property. It is undisputed that the mobile home in this case was separately assessed and given a value independent of the value of the real property.
This has led this court to the conclusion that a mobile home, particularly a separately assessed mobile home, remains personal property and does not become real property unless and until it is so permanently affixed to the real property as to despoil the lands simply by its attempted removal. This is not the case before us. The mobile home in question was one in which the plaintiff had a properly filed security interest since the initial transaction with the Hannolds. The testimony has clearly established that the mobile home retained its mobile character and was easily removed from the property within a matter of hours and with little or no damage to the real estate. As such, it is the opinion of this court that the mobile home is personal property which rightfully belongs to the plaintiff and which was rightfully repossessed by it upon notification that the property on which the mobile home was located was to be sold at a tax sale. As such, the plaintiff now has rightful possession of the mobile home and may do with it as it wishes. This court further finds that should the Legislature find that they wish to delineate and define all mobile homes as real property for tax assessment as well as all other purposes regardless of the manner in which they are affixed to the real estate it is clearly within their power to do so. It is the opinion of this court that the law as currently written does not do so.